ROBERT L. CARTON *vs.* LOUISE B. SHEA.

Essex. December 10, 1942. — December 29, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Contract*, What constitutes, Funeral expenses, Validity. *Lord's Day. Frauds, Statute of. Sale*, Statute of frauds. *Undertaker.*

The work of an undertaker is one of "necessity and charity" and is not subject to § 5 of G. L. (Ter. Ed.) c. 136, the Lord's day act.

An undertaker's claim in a gross sum over $500 upon an account annexed which included merchandise items in a sum less than $500 was not

subject to the defence under G. L. (Ter. Ed.) c. 106, § 6 (1), that it was not evidenced by a memorandum in writing.

A finding having been made, upon evidence warranting it at the trial of an action upon the claim of an undertaker, that the defendant was liable to the plaintiff on an original undertaking of his own although he also was administrator of the decedent's estate, a defence that the claim was unenforceable under G. L. (Ter. Ed.) c. 259, § 1, Second, because the defendant's promise was oral and was to pay the debt of another was without merit.

CONTRACT. Writ in the Superior Court dated March 6, 1940.

The case was heard by *Hurley*, J.

*R. M. Blake*, for the defendant, submitted a brief.

No argument nor brief for the plaintiff.

DOLAN, J. This action of contract was brought in the Superior Court to recover, on an account annexed, for the plaintiff's services as undertaker and for supplies and moneys advanced by him in connection with the burial of one William Kane, a cousin of the defendant. The case was tried before the judge sitting without a jury. The judge found for the plaintiff, and the case now comes before us on the defendant's exceptions to the denial of two of her requests for rulings.

The evidence in its aspects most favorable to the plaintiff would warrant findings of the following facts: In December, 1938, the plaintiff, who is an undertaker, was called to "attend the body" of William Kane, hereinafter referred to as the deceased, who "had dropped dead in Malden." As a result, he went to the home of one Mrs. Harris who had kept house for the deceased for twenty years. She told the plaintiff that the deceased was insured in the brotherhood of railway trainmen and that "a lady named Shea [the defendant] in New Bedford was the beneficiary . . . [and that she] would be there on Sunday morning." The plaintiff took care of the body and embalmed it. On Sunday morning the plaintiff returned to the house in Malden and met the defendant and her sister. After some conversation he took them and Mrs. Harris to the place of business of the "wholesaler" in Boston where "they sold them" a casket and vault. The defendant wished to limit

the expense to $500, "the amount of the policy." Mrs. Harris said she would pay "whatever the expense was over $500." The defendant "agreed with the plaintiff on $510 for the whole cost." On December 13, 1938, the plaintiff sent a bill to the defendant made out to "The Estate of William F. Kane" for a total of $530, made up of the following items: "Casket and Services Complete $495.00 . . . Cemetery Charges Opening of grave $25.00 Mass Fee $10.00." On January 10, 1939, the defendant wrote to the plaintiff stating that she could not understand the "$495 item," that the prices quoted by him were a total of $475 for casket, vault and his services, plus the items set forth above for opening the grave and for the mass. She further stated that he knew how eager she was to keep within the insurance money of $500, and that Mrs. Harris had promised to pay the excess over that sum. She also stated that she was very sorry to have kept him waiting for his money.

The plaintiff testified that his "bookkeeper got mixed up when she made out the bill to the estate of William Kane." The total of the account annexed set forth in the plaintiff's amended declaration was $510, together with interest in the sum of $40.55. There was further evidence that when Mrs. Harris said she would pay the bill "over $500," the defendant said, "No, you've been kind enough to Mr. Kane," and that the policy was for the purpose of paying the funeral bill. The defendant collected the amount of the policy as beneficiary. There was a second policy in the brotherhood which was payable to the estate of the deceased. The defendant was appointed administratrix of the estate of the deceased on March 31, 1939, and found a "$4000 bank account in Fall River in the name of William F. Kane and Annie Harris." The defendant testified that she intended to pay the funeral bill from the insurance policy if there were no assets in the estate.

At the close of the evidence the defendant made nine requests for rulings, and excepted to the action of the judge with respect to the seventh and ninth requests, which were as follows: "7. The evidence does not warrant a finding for the plaintiff. . . . 9. If the defendant was not originally

liable in her personal capacity, any promise made by her afterwards would be null and void if made on the Lord's Day." The judge denied the seventh request. In denying the ninth request he stated that he did so because he found that the defendant was originally liable in her personal capacity.

As was said in *Joseph S. Waterman & Sons, Inc.* v. *Hook*, 246 Mass. 522, 526, "The proper expense of a funeral is a preferred charge against the estate of a deceased person. . . . The liability of the estate is one 'on a promise implied by law and arising from the necessity of the case,' and exists although resulting from action taken before the appointment of an executor. . . . A stranger can count upon the obligation if justified in intermeddling." In that case the judge instructed the jury that "The person contracting for the services may be individually liable therefor, but such liability depends upon his or her individual agreement," and the court held that the judge had "adequately stated the governing principles of law and directed attention to the fact that liability, if any, of the defendant was because of an express contract on her part, or one implied in the light of circumstances from what was said and done" (page 528). In the present case the judge, in response to requests for rulings by the defendant, instructed himself fully and correctly in accordance with the principles of law just stated. The evidence most favorable to the plaintiff amply warranted the finding of the judge that the defendant was liable to the plaintiff in her personal capacity. *Hunting* v. *Ward*, 175 Mass. 223, 224. See *Charron* v. *Day*, 228 Mass. 305, 307.

The defendant, however, pleaded in defence and has argued before us that the contract in question is invalid under the Lord's day act, G. L. (Ter. Ed.) c. 136, because entered into on a Sunday. The short answer is that the "work of . . . undertakers is . . . by general concession within the exception" of § 5 of c. 136 of works of "necessity and charity," which are therein exempted from the operation of the statute. *Donovan* v. *McCarty*, 155 Mass. 542, 547. The defendant also pleaded in defence and has argued

before us that since the amount claimed to be due exceeds $500, and the contract is not evidenced by any memorandum in writing signed by her, it is not enforceable under the provisions of § 6 of the sales act, G. L. (Ter. Ed.) c. 106. This contention is without merit. The services of the plaintiff and the expenses of opening the grave and of the funeral services are not "goods or choses in action" within the meaning of c. 106, § 6, and the evidence discloses that the "goods" sold were not of the value of $500.

The defendant's contention, also pleaded by her as a defence, that the plaintiff's claim is unenforceable under G. L. (Ter. Ed.) c. 259, § 1, Second, because her alleged promise was to pay the debt of another is disposed of by the finding of the judge that the defendant was originally liable to the plaintiff in her individual capacity, which we interpret to mean that the judge found that, by the understanding of the parties, the defendant became liable to the plaintiff on an original undertaking of her own. It is settled that in such case the statute of frauds is not a defence. *Irving Tanning Co.* v. *Shir,* 295 Mass. 380, 382, 383, and cases cited. *Seder* v. *Kozlowski,* 304 Mass. 367, 370.

*Exceptions overruled.*